(38 Misc. Rep. 688.)

## CORNISH v. BENNETT.

(Supreme Court, Special Term, New York County. September, 1902.)

1. LIBEL—COMPLAINT—DEMURRER.

    A complaint in a libel was based on an article published in a newspaper, and alleged that the article stated that, though another man was on trial for the murder of a woman by poison, yet that she had received the dose that killed her from plaintiff, and that it had been intimated that plaintiff had poisoned a female friend of the murdered woman at a named place; that such woman had shown similar symptoms; that these facts were important as affecting the case on trial, and that the residents of the place in which the other woman had died believed that they might have to come forward and relate the facts of such death to the jury on the murder trial. *Held* that, as the article was ambiguous, the complaint was not demurrable, the question whether the article was defamatory being for the jury.

Action by Harry S. Cornish against James Gordon Bennett. Demurrer to the complaint overruled.

John J. Adams, for plaintiff.
Jay & Candler, for defendant.

WRIGHT, J. The complaint alleges that the defendant falsely and maliciously published in the widely circulated columns of the New York Herald an article concerning the plaintiff which insinuated that he had a guilty relationship with the murder of Mrs. Katherine J. Adams. The article, in addition to the necessary formal averments, alleged, in substance, that Mrs. Adams came to her death by poison feloniously administered to her, and that, although Molineux was on trial for her murder, yet Harry S. Cornish was the man from whose hands she received the dose that killed her; and that there are developments in the case outside the courtroom more interesting than

those of the actual trial; that visitors at the same summer resort with Cornish at New Britain, Conn., in August, 1893, have a story to tell, in that one Mrs. Hovey, a friend of Mrs. Adams, and with whom the Cornish party was associated a great deal, was one night taken strangely and mysteriously ill with violent retching and dreadful paroxysms, and that there was a curious similarity between her symptoms and those of the murdered woman Mrs. Adams, and that no explanation was made of her illness, and it was intimated that she had been poisoned; and that those facts may have some bearing on the Molineux case; and that residents of New Britain who recall the matter believe that in the interests of justice they may have to come forward and tell the story to the jury. A libel is defined in the Penal Code of this state as follows:

"Sec. 242. A malicious publication, by writing, printing, picture, effigy, sign or otherwise than by mere speech, which exposes any living person, or the memory of any person deceased, to hatred, contempt, ridicule or obloquy, or which causes, or tends to cause any person to be shunned or avoided, or which has a tendency to injure any person, corporation or association of persons, in his or their business or occupation, is a libel."

Any written or printed words are libelous which impute to a person that he has been guilty of any crime, fraud, dishonesty, immorality, vice, or has been accused or suspected of any such misconduct. 13 Am. & Eng. Enc. Law, 299. If it should be considered doubtful whether the above publication, under the alleged widely understood circumstances, would convey to the ordinary reader the idea and insinuation that the plaintiff had some feloniously guilty connection with the murder of Mrs. Adams, or that, instead thereof, it would convey to such reader an innocent meaning, it should be left to the jury to determine that question. In Garby v. Bennett, 40 App. Div. 164, 57 N. Y. Supp. 853, the following rule is laid down:

"Where the language of a publication alleged to be libelous is ambiguous, and capable of two constructions, one defamatory and the other innocent, it is for the jury to determine in which sense the words were intended and understood."

Under the foregoing rules it is apparent that the above allegations constitute a cause of action in libel; consequently, the demurrer must be overruled, with costs, with leave to the defendant to serve an answer within 20 days after the service of the interlocutory judgment which may be prepared and entered herein.

Demurrer overruled, with costs, with leave to defendant to serve answer within 20 days after service of interlocutory judgment.